**ALTMANN et al., Appellants,**

v.

**SOUTHWYCK AMC–JEEP–RENAULT, INC., Appellee.**

[Cite as *Altmann v. Southwyck AMC–Jeep–Renault, Inc.* (1991), 76 Ohio App.3d 92.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–350.

Decided Oct. 25, 1991.

*John A. Coble*, for appellants.

*Martin J. Holmes* and *Scott A. Winckowski*, for appellee.

---

SHERCK, Judge.

This is an appeal from the decision of the Lucas County Court of Common Pleas granting a judgment notwithstanding the verdict to appellee, Southwyck AMC–Jeep–Renault, Inc., a corporation whose business was selling motor vehicles. A jury had determined that the buyers of a new truck from appellee were entitled to revoke their acceptance of the truck because there was concealed damage to the truck which substantially impaired the value of the truck to them. Because we find the trial court erred in determining that the damage to the vehicle in question was, as a matter of law, not a substantial impairment, we reverse the trial court's decision.

In February 1988, appellants, Michael P. Malone and his then fiancee, Linda K. Altmann, n.k.a. Malone, contracted with appellee to purchase a "new" 1987 Jeep Comanche pickup truck. After viewing the truck in appellee's showroom and test-driving it, appellants agreed to pay $12,775 for the vehicle.

Shortly after taking possession of the truck, appellants discovered that the right rear quarter panel of the truck had been damaged prior to their taking delivery of the vehicle. The damaged portion had been repaired and painted over by appellee without appellants' knowledge.

Appellants notified appellee of their revocation of acceptance of the vehicle, but appellee refused to allow appellants to rescind their agreement. Appellants brought suit seeking, *inter alia*, rescission of the contract pursuant to R.C. 1302.85[1] and 1302.66. Appellants asserted that the Jeep they had purchased had nonconformities which substantially impaired the value of the vehicle to them and undermined their belief in the integrity and reliability of the vehicle.

At trial, appellee's internal documents showed that the truck appellants purchased had sustained "lot damage" at some point prior to appellants' purchase of the vehicle. Appellee had repaired and repainted this damage prior to when appellants first saw the vehicle. Neither party offered testimony as to the cause or total extent of the damage.

---

1. R.C. 1302.85 (UCC 2–711) provides that:

"Where * * * the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, * * * the buyer may cancel and * * * may in addition to recovering so much of the price as has been paid: * * * (2) recover [incidental] damages * * *."

Appellants' expert, auto broker Richard Grant, testified by deposition that because of the repair and repainting that had been done to the truck, it would not be possible to determine the exact extent of the damage without dismantling the bed of the truck. According to Grant, however, the suspicion of hidden damage engendered by a repair on a vehicle as new as this truck would reduce its market value by between $500 and $600.

Appellee called auto body repairman Jerry Throne, who testified that he had examined appellants' truck and that the cost of repairing the damage, in his estimation, was between $100 and $150. On cross-examination, Throne conceded that he could not determine the full amount of the damage that had been repaired without sanding off the paint that had been applied.

Both appellants testified that they had first seen the truck on appellee's showroom floor, where it had been held out to be a new truck. According to appellants, appellee had failed to inform them of any prior damage to the vehicle. Appellee's agents, in fact, initially denied any knowledge of the damage even when appellants brought it to their attention.

Appellant Michael Malone testified that when he discovered the damage, he returned the truck to the dealership and "told them I wanted a new car [*sic*]. That's what I paid for. I didn't pay for something that's been repaired and repainted." According to Michael Malone, himself a diesel mechanic, he was concerned about the quality of a dealer shop repair and paint job as opposed to factory applied paint. Appellant Michael Malone testified that he feared that eventually rust could develop or the paint fall off if the dealer's repair had been substandard. Appellant Linda Malone testified that she shared her husband's concerns.

The case was submitted to a jury, which returned a verdict for appellants on the issue of rescission and assessed damages in the amount of $13,000. In response to interrogatories accompanying the general verdict, the jury found "by the preponderance of the evidence that the 1987 Jeep Comanche had nonconformities that substantially impaired its value to [appellants] at the time of sale * * * [and] * * * undermine[d] the integrity and reliability of the pick-up truck to the [appellants]." [2]

---

**2.** The jury also found that appellee had made false representations to, or concealed material facts from, appellants, with the intent to mislead appellants into justifiably relying on those statements or omissions, resulting in appellants' purchase of the truck. The jury returned a general verdict for appellants on a fraud claim but declined to find any damage to appellants.

The jury returned verdicts for appellee on an Ohio Consumer Sales Practices Act violation claim and a breach of contract claim.

The trial court entered judgment on the verdict, specifically awarding appellants the $13,000 judgment and further ordering appellants to return the truck with the executed title to appellee. Appellee then moved for a judgment notwithstanding the verdict. The trial court, finding "a total failure of evidence to support a finding that undiscovered damage was such as to substantially impair the value to the [appellants] and thus warrant rescission," subsequently granted the JNOV on the rescission judgment. The trial court then entered judgment in favor of appellants in the amount of $300 for damages. From this order, appellants bring this appeal, citing a single assignment of error:

"The trial court erred in granting the appellee judgment notwithstanding the verdict."

" * * * A favorable ruling on [a motion for a JNOV] is not easily obtained, as this court explained in *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275 [74 O.O.2d 427, 430, 344 N.E.2d 334, 338]:

" 'The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. *Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.*' (Emphasis added.)" *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 412, 504 N.E.2d 19, 21–22.

"A motion for directed verdict or a motion for judgment notwithstanding the verdict does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence." *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, at paragraph three of the syllabus. See, also, *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 74–75, 529 N.E.2d 464, 467–468.

The trial court held that because the damage to appellants' truck was not above $300, such damage, as a matter of law, did not substantially impair the value of the vehicle. Therefore, appellants were not entitled to rescind the purchase agreement. This decision appears to stem from (1) misapplication of a special interrogatory wherein the jury refused to find that the value of the damage to the truck was above $300, and (2) confusion over the standard of nonconformity necessary to revoke the acceptance of merchandise under R.C. 1302.66 (UCC 2–608).

We will first discuss the effect of the jury's finding that the value of the damage to appellants' truck was below $300. The interrogatory the jury answered was as follows:

*"INTERROGATORY NO 4.*—Do you find by a preponderance of the evidence that the defendant violated the Ohio Consumer Sales Practice Act by failing to disclose to the plaintiffs any defects, repairs, and/or the extent of any prior damage to the subject vehicle, the retail repair cost of which exceed three hundred dollars $300.00?"

By reading the complete language of this interrogatory, it is clear that the question referred, not to appellants' rescission count, but to appellants' claim under the Ohio Consumer Sales Practice Act, for which the jury rendered a general verdict for appellee. Even if the jury had intended its finding that damage was below $300 to apply to the rescission claim it is still a misapplication of the law to find that such damage was *de minimus* and did not substantially impair the value of appellants' truck.

R.C. 1302.66(A) provides that a buyer is entitled to revoke his acceptance of merchandise

" * * * whose non-conformity substantially impairs its value *to him* if he has accepted it:

" * * *

"(2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." (Emphasis added.)

It is uncontroverted that the damage to appellants' vehicle was difficult to discover. It is also uncontroverted that appellee, both implicitly and explicitly, held out appellants' vehicle to be new. See *Brooks v. Hurst Buick–Pontiac–Olds–GMC, Inc.* (1985), 23 Ohio App.3d 85, 89, 23 OBR 150, 153, 491 N.E.2d 345, 350. Thus, on acceptance, appellants took possession of the truck without discovery of its nonconformity both because discovery was difficult and because appellants relied on appellee's assurances that the vehicle was new.

The only remaining question is whether the nonconformity substantially impairs the value of the merchandise *to the buyers.*

"Whether a complained of nonconformity substantially impairs an item's worth to the buyer is a determination exclusively within the purview of the fact-finder * * *. Any defect that shakes the buyer's faith or undermines his confidence in the reliability and integrity of the purchased item is deemed to work a substantial impairment of the item's value and to provide a basis for revocation of the underlying sales agreement." *McCullough v. Bill Swad*

*Chrysler–Plymouth, Inc.* (1983), 5 Ohio St.3d 181, 186, 5 OBR 398, 403, 449 N.E.2d 1289, 1294.

Appellant Michael Malone testified that he believed a dealer's shop repair and repainting was inferior to factory painting. He also testified that he believed rust or finish damage could occur if the dealer's repair had not been done properly and that without disassembling the truck there was no way to be sure that the dealer's repair was proper. Appellants' expert witness agreed with Michael Malone's assessment. Appellee's expert witness testified that it was not possible to tell the extent of the repair without sanding off the paint. The testimony of both of these witnesses provides objective evidence that appellants' concerns had some substance.

Appellants testified that the discovery of the dealer's repair undermined their confidence in the reliability and integrity of the vehicle. It was uncontroverted that appellants' truck was damaged and repaired. As discussed above, the extent of this damage and the success of its repair were not discernible without dismantling the truck. Based on this evidence, we cannot say that it was unreasonable for the jury to find that appellants' confidence in the reliability and integrity of the vehicle was impaired, resulting in a substantial impairment of the value of the vehicle to appellants. Accordingly, the trial court erred in determining, as a matter of law, that the value of appellants' vehicle was not substantially impaired. Appellants' assignment of error is well taken.

On consideration whereof, the court finds substantial justice has not been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas granting to appellee a JNOV is reversed and the cause is remanded to the trial court for entry of judgment on the jury verdict. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed.*

HANDWORK, P.J., and ABOOD, J., concur.