BRYAN–WOLLMANN et al., Appellants,

v.

DOMONKO, Appellee.

[Cite as *Bryan–Wollmann v. Domonko*, 167 Ohio App.3d 261, 2006-Ohio-2318.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86429.

Decided May 11, 2006.

James A. Jenkins, for appellants.

James L. Glowacki and William H. Kotar, for appellee.

JAMES J. SWEENEY, Judge.

{¶ 1} Plaintiffs-appellants, Kathleen Bryan–Wollmann and Michael Wollmann, appeal from the defense verdict and judgment entered on their negligence claim against defendant-appellee, Corrine Domonko. The Wollmanns believe that the verdict was not supported by the evidence and that the trial court erred by denying their posttrial motions for judgment notwithstanding the verdict or for a new trial. For the reasons that follow, we reverse and remand for a new trial.

{¶ 2} The plaintiffs assert that Mrs. Wollmann suffered extensive injuries as a result of a car accident caused by Ms. Domonko's negligence on September 30, 1999. Ms. Domonko admitted her negligence caused the accident. She, however, disputed the extent of injury to Mrs. Wollmann as a result of the collision.

{¶ 3} At trial, the witnesses included Ms. Domonko, the Wollmanns, plaintiffs' expert witnesses, defendant's expert witnesses, and some of Mrs. Wollmann's former coworkers.

{¶ 4} It was undisputed that Mrs. Wollmann was transported from the accident to the hospital emergency room by ambulance. The medical records reflect that she was complaining of neck pain and a burning sensation. Mrs. Wollmann was x-rayed and received medications and injections. Plaintiffs allege that she subsequently developed additional symptoms, including lower back pain, related to the accident.

{¶ 5} The Wollmans experts opined that the September 1999 car accident caused a myriad of injuries and damages to Mrs. Wollmann. In particular, plaintiffs presented the testimony of Dr. Vernon Patterson and Dr. Oas. Dr. Patterson's practice is a combination of medical orthopedics and primary-care sports medicine. Dr. Oas is a neurologist. Both related Mrs. Wollmann's persistent and extensive symptoms and medical problems to the September 1999 accident.

{¶ 6} In response, Ms. Domonko offered the testimony of several expert witnesses to dispute the extent of injury suffered by Mrs. Wollmann as a result of the accident. First to testify was Dr. Donald C. Mann, who specializes in neurology. Ultimately, he concluded that the September 1999 automobile accident had no contribution to Mrs. Wollmann's present state, which included complaints of dizziness, head pain, neck pain radiating down her arms, sleep difficulty, vision trouble, difficulty with recall, and depression.

{¶ 7} Defendant then offered the testimony of Dr. Balraj, a neuropsychologist who treats patients for psychological illnesses and neuropsychological problems. Dr. Balraj explained that he had been asked to determine whether Mrs. Wollmann suffered a brain injury as a result of the accident. He concluded that she had not but stated that his opinion derived largely from subjective observations. He also relied on the medical records, which indicated that Mrs. Wollmann did not lose consciousness following the accident.

{¶ 8} Last, Dr. Kim Stearns, an orthopedic surgeon, testified on behalf of the defense. Dr. Stearns concluded that Mrs. Wollmann had sustained cervical and lumbar sprains as a result of the car accident. He opined that those injuries should have resolved within a two-to-three-month period following the accident. Based on that theory, he further concluded that any of Mrs. Wollmanns' complaints that persisted beyond that period were unrelated to the accident.

{¶ 9} In addition to the experts, Ms. Domonko also presented evidence of Mrs. Wollmanns' significant medical history.

{¶ 10} Although Ms. Domonko's admitted negligence and disputed only the extent of injury proximately caused by the accident, the jury returned a defense verdict. The trial court denied plaintiffs' motion for a judgment notwithstanding the verdict or for a new trial.

{¶ 11} The Wollmann's raise two assignments of error as set forth below:

{¶ 12} "I. The trial court abused its discretion in denying appellants' motion for judgment notwithstanding the verdict where there was insufficient evidence to support the jury's verdict.

{¶ 13} "II. The trial court abused its discretion in denying appellants' motion for new trial as it failed to independently weigh the evidence and assess the credibility of witnesses."

{¶ 14} When a motion for judgment notwithstanding the verdict is considered, "[t]he evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different

conclusions, the motion must be denied." *Altmann v. Southwyck AMC–Jeep Renault* (1991), 76 Ohio App.3d 92, 95, 601 N.E.2d 122.

{¶ 15} Civ.R. 59 provides for the granting of a motion for a new trial where the judgment is not supported by the weight of the evidence. Civ.R. 59(A)(6). The trial court's decision not to grant a new trial will not be reversed absent an abuse of discretion. *Isquick v. Classic Autoworks, Inc.* (1993), 89 Ohio App.3d 767, 774, 627 N.E.2d 624. Where a motion for new trial is denied, there must be competent, credible evidence in the record to support the jury's verdict. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

{¶ 16} " 'A motion for a new trial with reference to the weight or sufficiency of the evidence * * * imposes upon that court a duty to review the evidence and pass upon the credibility of witnesses.' " *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 90, 52 O.O.2d 376, 262 N.E.2d 685, quoting *Berry v. Roy* (1961), 172 Ohio St. 422, 17 O.O.2d 356, 178 N.E.2d 37.

{¶ 17} As set forth above, Ms. Domonko had conceded liability, leaving as the sole question for the jury the amount of damages proximately caused by her negligence. *Golias v. Goetz* (July 22, 1999), Cuyahoga App. No. 73924, 1999 WL 528613. Yet the jury returned a verdict in Domonko's favor.

{¶ 18} No one disputed that Mrs. Wollmann left the scene of the accident by ambulance or that she required a certain amount of medical attention as a result of the accident. No one claimed that the emergency room visit or treatment was unreasonable or unnecessary. On at least two occasions the trial court observed on the record that the manifest weight of the evidence established that plaintiffs were entitled at a minimum to the medical bills from the emergency room visit.

{¶ 19} Defendant failed to refute that Mrs. Wollmann suffered some injury as a direct and proximate result of the September 1999 accident. Plaintiffs and their experts opined that Mrs. Wollmann suffered extensive and ongoing injuries as a result of the accident. While defense expert Dr. Mann felt that none of Mrs. Wollmann's present conditions were related to the 1999 accident, he never claimed that she suffered no injury as a result of it. Dr. Balraj opined that Mrs. Wollmann had not suffered a brain injury but did not necessarily disagree with plaintiffs' neurology expert, Dr. Oas, who opined that the dizziness she experiences stems from a neck injury related to the car accident. Rather, Balraj distinguished that he was looking at a different question than Dr. Oas when he examined Mrs. Wollmann. The final defense expert, Dr. Stearns, actually concluded that Mrs. Wollmann suffered injuries as a result of the 1999 accident.

{¶ 20} While the record contains a significant amount of disagreement over the extent of plaintiff's damages, there was a certain amount of uncontroverted

evidence that plaintiff did suffer some damages as a proximate result of Ms. Domonko's negligence. In such cases, a defense verdict is against the manifest weight of the evidence because it is not supported by competent, credible evidence. See *Salem v. Trivisonno* (Jan. 29, 1998), Cuyahoga App. No. 71147, 1998 WL 32778, citing *Vescuso v. Lauria* (1989), 63 Ohio App.3d 336, 578 N.E.2d 862, and *Hallman v. Skender* (Jan. 28, 1988), Cuyahoga App. No. 53027, 1988 WL 8393.

{¶ 21} The trial court should have granted plaintiffs' motion for judgment notwithstanding the verdict or a new trial. The assignments of error are sustained, and this cause is reversed and remanded for a new trial.

Judgment affirmed
and cause remanded.

DYKE, J., concurs.

COONEY, J., dissents.

COLLEEN CONWAY COONEY, J., dissenting.

{¶ 22} I respectfully dissent.

{¶ 23} In the instant case, there were multiple medical experts for both Wollmann and Domonko, each giving a different medical opinion as to whether Wollmann's complaints were related to the auto accident. Based on the volume of conflicting testimony in this matter, the issues of proximate cause and damages were in the province of the jury to weigh the testimony and ultimately believe or disbelieve the medical opinions rendered.

{¶ 24} From a review of the record, it appears that the jury did not believe that the accident caused Wollmann's injuries. I would find that the jury's defense verdict was supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶ 25} Wollmann testified that as a result of the auto accident, she experienced many injuries, including neck pain, memory problems, foot numbness, dizziness, lightheadedness, fatigue, head pain, sleep problems, arm pain and numbness, left-shoulder pain and pinching, swelling of the throat in front of the neck, difficulty swallowing, talking, chewing, sitting, walking, and lying down, pain in her clavicle, lower- and upper-back pain, nerve damage to her back, and snoring. She also alleged that she could not drive at night because she saw "star bursts." Wollmann further claimed that she could no longer work due to the injuries she suffered as a result of the accident. She testified that she continues to suffer from pain in her neck and back and that she receives treatment for a variety of injuries, including Botox injections.

{¶ 26} On cross-examination, however, Wollmann was questioned regarding medical records that indicated that all of her alleged complaints preceded the accident, including headaches, depression, dizziness, double vision, and vertigo. Wollmann also testified that she was involved in two prior accidents in 1983 and in the late 1990s. Wollmann testified that she sustained an injury to her lower back in the 1983 accident, from which she never fully recovered.

{¶ 27} Medical expert Dr. Vernon Patterson testified on behalf of Wollmann. He testified that in October 1999, he conducted a musculoskeletal examination on Wollmann, concentrating on her neck and upper back. He further testified that she complained of neck pain, arm and foot numbness, headaches, dizziness, a decrease in concentration, memory loss, and sleep difficulties. According to Patterson, Wollmann had a decreased range of motion and tenderness in her neck and upper back. He further stated that she suffered from dizziness when she moved her head. Patterson testified that as of August 2004, her diagnosis had become more complex because her conditions had progressively worsened. He opined, based upon a reasonable degree of medical certainty, that her conditions were related to the auto accident.

{¶ 28} On cross-examination, Patterson was questioned regarding two different reports he issued as a result of his examination and a letter he received from Wollmann's counsel. Both reports were dated August 13, 2004; however, they contained different causal statements. Patterson testified that the report was not changed, but clarified, at the request of Wollmann's counsel. Both versions of the report as well as the letter sent from Wollmann's counsel requesting the amendment were submitted to the jury.

{¶ 29} Another plaintiff expert, Dr. John Oas, testified regarding his examination of Wollmann for diagnosis and treatment of dizziness. He testified that there were three different causes of her dizziness that were impossible to differentiate. The first diagnosis was cerviogenic dizziness, which means "dizziness with origin in the neck." Oas explained that this condition related to the position of her head and how the movement of the head and her inner-ear functions created balancing conflicts in the brain. The second diagnosis, benign paroxysmal positional vertigo, was abandoned as a potential cause of Wollmann's dizziness. The final diagnosis was migraine-associated dizziness. Oas stated that although she is genetically vulnerable to headaches and dizziness, some, but not all, of her dizziness stems from migraines. According to Oas, migraines cannot explain her neck pains, because migraines are not treated with Botox. However, he did opine that neck pain can cause migraines. Oas testified that based upon a reasonable degree of medical certainty, the cerviogenic dizziness and injury to her neck were directly and proximately caused by the auto accident.

{¶ 30} On cross-examination, Oas admitted that he had no prior knowledge of whether Wollmann had any complaints of cerviogenic dizziness prior to the accident. Oas was also questioned regarding the different reports he generated as a result of his examination. He drafted the first report dated August 24, 2004, wherein he made specific opinions regarding the cause of Wollmann's dizziness. However, in his September 14, 2004 report, those specific opinions were deleted at the request of Wollmann's counsel. When asked about the purpose of the deletions, Oas responded that the deletions were done to clarify and make his report simpler. Both versions of the report were submitted to the jury.

{¶ 31} Defense medical expert Dr. Donald Mann testified that his physical examination of Wollmann revealed that she experienced dizziness from the recline position, her neck movement was restricted, and she had trouble bending forward. However, her eyes, facial movements, cranial nerves, hearing, extremity sensations, reflexes, general postural movements, and walking were normal. Mann also examined two MRIs from October 1999 and September 2000. He testified that the 1999 MRI showed a herniated disk with mild impingement on the spine and that the 2000 MRI showed degenerative changes with no impingement on the spinal cord or nerve root. Mann testified that based on Wollmann's previous medical history, the symptoms she was currently experiencing had been present before the accident. He opined, based on a reasonable degree of medical certainty, that the auto accident did not contribute in any way to Wollmann's present condition. He further testified that Wollmann had cervical degenerative disk disease prior to the accident.

{¶ 32} Defense expert Dr. Vijay Balraj a neuropsychologist, examined Wollmann regarding brain function and any brain injury. He testified that his examination revealed that Wollmann was suffering from high levels of anxiety and depression, which may have affected memory and motor functions. He also opined that Wollmann's personality profile suggested that she had a high likelihood of a somatization or conversion disorder. Balraj explained that a person will unconsciously take psychological or emotional stress, i.e., anxiety or depression, and convert that into physical symptoms, which is often the cause of intractable pain complaints or other disorders. Balraj opined to a reasonable degree of neuropsychological probability and based upon his evaluation and Wollmann's medical history that Wollmann did not sustain a memory loss as a result of the accident.

{¶ 33} Domonko's last medical expert to testify, Dr. Kim Stearns, opined to a reasonable degree of medical certainty and probability that Wollmann sustained cervical and lumbar sprains that were proximately caused by the automobile accident. He further testified that these injuries were new injuries and were not exacerbations or aggravations of a preexisting condition. Stearns, however,

admitted that these soft-tissue injuries typically respond and resolve within two to three months after injury and that Wollmann's continuing complaints were unrelated to the accident but related to preexisting conditions.

{¶ 34} Although Dr. Stearns testified that Wollmann had sustained some injury as a result of the accident, there were multiple expert opinions to the contrary.

{¶ 35} A jury has the choice to believe or disbelieve the testimony presented by the witnesses, and absent passion or prejudice, the jury's verdict should not be disturbed upon appeal unless the verdict is incredible. *Culpepper v. Pedraza,* Cuyahoga App. No. 82382, 2004-Ohio-145, 2004 WL 64061. "A jury is free to believe all, part, or none of the testimony of any witness who appeared before it." *Iler v. Wright,* Cuyahoga App. No. 80555, 2002-Ohio-4279, 2002 WL 1938606, at ¶ 15, citing *Rogers v. Hill* (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438. Moreover, questions of fact are best left to the trier of fact. *Complete Gen. Constr. Co. v. Ohio Dept. of Transp.* (2002), 94 Ohio St.3d 54, 760 N.E.2d 364.

{¶ 36} It has long been held that factfinders are generally charged with drawing reasonable inferences from established facts, and that they " 'view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Mid–America Tire, Inc. v. PTZ Trading Ltd.,* 95 Ohio St.3d 367, 2002-Ohio-2427, 768 N.E.2d 619, ¶ 161, quoting *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation that is consistent with the verdict and judgment most favorable to sustaining the verdict and judgment. *Seasons Coal,* supra.

{¶ 37} The jury heard testimony from Wollmann's experts that her injuries were related to the accident. However, the jury also heard testimony from those experts that Wollmann's counsel asked them to change or clarify their reports. Testimony was given by Domonko's experts that Wollmann's complaints were not related to the accident but instead were somatizations or preexisting conditions. However, there was also testimony from a defense expert that Wollmann sustained injury to her neck and back. The jury was presented with evidence requiring assessment of the weight of the evidence and credibility of the witnesses. We cannot speculate what testimony the jury believed or disbelieved, nor are we to weigh the evidence or determine the credibility of the witnesses. However, my review of the testimony and evidence adduced at trial indicates that there is some competent and credible evidence to support the jury's verdict in favor of Domonko.

{¶ 38} I would find that the trial court did not abuse its discretion in denying Wollmann's motion for judgment notwithstanding the verdict for a new trial, and I would affirm.