OPINION
{¶ 1} Appellant, Shawn D. Cook, appeals the jury's unanimous verdict in favor of appellee, Michael R. Blank, in this personal injury action, finding that his negligence in operating a motor vehicle was not the proximate cause of Mr. Cook's injuries. For the following reasons, we affirm.
 {¶ 2} Substantive and Procedural History
 {¶ 3} On August 4, 1999, Mr. Blank caused a three car motor vehicle accident at the corner of State Route 45 and North River Road in Warren, Ohio. Mr. Blank, who *Page 2 
admitted he was negligent in causing the accident, was looking in his rearview mirror at the closely trailing vehicle behind him. He turned back to the roadway in front of him too late, however, to come to a stop as the traffic ahead had stopped at the red light at the intersection while his attention was diverted.
 {¶ 4} Mr. Blank's Pontiac rear-ended a Buick that was being driven by Mrs. Elizabeth Humphrey, who in turn rear-ended Mr. Cook, who was driving a Trumbull County pickup truck. Mr. Cook was thrown upwards, causing his head to hit the truck's ceiling. Everyone at the scene refused treatment and appeared uninjured.
 {¶ 5} Two days later, on August 6, 1999, Mr. Cook testified that he was still in a great deal of back pain, experiencing tingling in his lower left leg, and burning sensations in his neck. He sought care at St. Joe's Hospital, where he reported a patient history of chronic back pain. The attending physician instructed Mr. Cook to ice and heat his back, take 800 milligrams of acetaminophen, and gave him a referral for a physician, Dr. DeChellis. Dr. DeChellis prescribed a series of different therapies that included medication, electric therapy, ultrasound, and heat pack therapy. Unfortunately, none of these therapies helped his condition, and Dr. DeChellis referred him to another specialist, Dr. Marsolias.
 {¶ 6} On February 11, 2002, Mr. Cook fell on the ice-covered steps of a pump station in Brookfield while on the job for the sanitation department. He fell, and slipped to his knees on the ice, impacting his lower back. He drove back to the office, and later called Dr. Marsolias to report the fall. An MRI revealed that he had herniated discs, and approximately one month later, Dr. Marsolias performed low back surgery, a decompression laminectomy. Mr. Cook testified that the back surgery did not result *Page 3 
from the fall on the ice a month earlier, but actually was caused by the 1999 accident with Mr. Blank. Dr. Marsolias did not testify.
 {¶ 7} Roughly two months after his surgery, on May 1, 2002, Mr. Cook was involved in another motor vehicle accident that was caused when his foot slipped from the brake, causing his car to veer and broadside an oncoming car in the next lane. He reported that he was not injured in the accident. In fact, after the accident occurred, he directed traffic for about forty minutes until police arrived on the scene.
 {¶ 8} Unfortunately, his surgery was not a success, and after the May 1, 2002 accident, a subsequent MRI showed that the laminectomy had failed. Mr. Cook later sought treatment with Dr. Snioff and now walks with a cane, which he said was prescribed by Dr. Snioff. Dr. Snioff, however, did not remember prescribing the cane during his trial deposition. Mr. Cook began to see Dr. Snioff in 2004, after his original physician, Dr. Sherman, lost his license because he was abusing prescribed substances.
 {¶ 9} Since the time of the 1999 accident Mr. Cook has been on a series of medications for pain, depression, and anxiety. He has also struggled with substance abuse for illegal drugs, and has been treated for his addiction to cocaine. Due to his chronic back condition, he was unable to continue working, and in 2005, he was placed on permanent disability.
 {¶ 10} Mr. Cook subsequently filed a complaint in the Trumbull County Court of Common Pleas, alleging that Mr. Blank's negligence in the accident had directly and proximately caused him to sustain physical injuries, extensive pain and suffering, *Page 4 
permanent physical injuries, medical expenses, lost wages, and a diminished earning capacity.
 {¶ 11} Prior to trial, numerous motions in limine were filed by both parties regarding the parameters for testimony by Mr. Cook's physicians and the admission of evidence regarding his criminal record.
 {¶ 12} At trial, Mr. Cook attributed his chronic back problems and the devastating effects it has caused in his life solely to the August 4, 1999 accident. At deposition and at trial, he did not recall a 1992 elevator accident, a 1995 motor vehicle accident, or a 1998 jet-ski accident, as well as the consequent treatment sought for the back injuries sustained in these accidents. He also failed to recall two MRI scans taken before the subject accident, which revealed pre-existing disc abnormalities. In fact, the 1998 MRI demonstrated a central and left herniation at L5, L1 with a small central protrusion at L3, L4.
 {¶ 13} He did, however, recall several other events which triggered exacerbations of his back injury, including a violent sneeze in 2001, which prompted him to call Dr. Marsolias, who ordered an urgent MRI, as well as an unfortunate twist at the dinner table later that same year.
 {¶ 14} Expert Testimony as to Causal Relationship
 {¶ 15} Dr. Snioff testified that Mr. Cook was permanently disabled, and that as a result of the accident and resultant disability, he suffers from pain, depression, and anxiety. He further opined to a reasonable medical certainty that Mr. Cook's chronic back problems, specifically the damage to the ligaments and tendons of Mr. Cook's *Page 5 
lower spine, a rupture of his lumbar disc, and compression of his nerve roots, were caused by the August 4, 1999 motor vehicle accident.
 {¶ 16} On cross-examination, Dr. Snioff admitted that he had not reviewed any of Mr. Cook's medical records prior to the August 4, 1999 motor vehicle accident, and that his knowledge of Mr. Cook's prior history was gathered from what Mr. Cook himself had reported. Dr. Snioff was also not aware that an August 6, 1999 hospital intake sheet recorded a history of chronic degenerative disc disease, and did not recall knowing of the February 2002 surgery. He became aware of Mr. Cook's prior accidents only when reviewing Mr. Cook's medical records for the deposition. He also based his opinion and prognosis using only one of Mr. Cook's MRI studies performed after the ice fall accident.
 {¶ 17} Dr. Dane Donich, a neurosurgeon, reviewed Mr. Cook's medical records and testified for the defense as an expert witness. From the treatment indicated in the hospital records two days after the subject accident, Dr. Donich opined that there was no significant injury to Mr. Cook's lower back from the car accident, no sciatica, or pinched nerves, and no signs of fracture or acute injury. He noted that the radiologist who interpreted the MRI of March 1, 2000, found no significant changes from Mr. Cook's MRI study done in August of 1992. Dr. Donich also noted that none of Mr. Cook's records discussed impending surgery until after Mr. Cook's ice fall on February 11, 2002. The MRI that was taken after that fall, in March of 2002, just prior to the surgery, showed a significant change that warranted the corrective surgery.
 {¶ 18} Dr. Donich found no objective evidence to suggest Mr. Cook's back injury was caused by the 1999 accident, and noted that Dr. Marsolias' records did not refer to the 1992 MRI, which indicated to him that Dr. Marsolias was probably unaware that an *Page 6 
MRI was done at that time. Dr. Donich also opined that it was a "ridiculous stretch" that the accident, as relayed by Mr. Cook, would cause a herniated disc.
 {¶ 19} Conflicting Testimony as to the Extent of Permanent Injury
 {¶ 20} Mr. Cook's mother, Mrs. Janet Cook, testified that prior to the accident Mr. Cook was very athletic and engaged in various sports and activities, such as baseball, soccer, fishing, and hunting. He married in 1994, but then subsequently divorced in 2003 or 2004. Mrs. Cook further testified that since the accident he has suffered a great deal of pain and depression from his lower back problems. She observed that his activity has declined and he could do less and less, at times just laying on a mattress at home. She was not aware of her son's prior or subsequent accidents that also resulted in lower back injuries, such as the elevator accident that occurred in 1992, the jet-ski accident of 1998, the fall on ice while he was working for Trumbull County in February of 2002, or the accident that occurred several months later on May 1, 2002.
 {¶ 21} Contrasting testimony was presented by Alan Zickefoose and Mr. Scheidegger. On January 2, 2006, at a Howland tavern, Mr. Zickefoose, a stranger to Mr. Cook, witnessed him start a physical altercation, in which he grabbed a gentleman by the shirt as if to strike him when another man came out from behind the bar. Mr. Cook threw the approaching man to the ground and stormed out of the bar.
 {¶ 22} Mr. Zickefoose and his companions decided to leave shortly after the incident. While they were in the parking lot, Mr. Cook drove his van towards Mr. Zickefoose and Mr. Scheidegger, swerving away only moments before impact. Mr. Zickefoose began yelling at Mr. Cook, at which point Mr. Cook drew a gun, raised it into the air, and then left the parking lot. Mr. Zickefoose went inside of the bar to warn them *Page 7 
that Mr. Cook was armed. A bartender locked the door behind him. While Mr. Zickefoose was saying good-bye to his cousin, Mr. Cook returned, again driving towards them and swerving at the last minute. His cousin began yelling at Mr. Cook, who pulled his gun in reaction and this time pointed it at both of them. He did not observe a cane and did not observe any physical limitations on the part of Mr. Cook.
 {¶ 23} Mr. Zickefoose's uncle, Mr. Scheidegger, also testified as an eyewitness to the event, testifying that he observed no physical limitations on the part of Mr. Cook when he saw him pull someone off of a bar stool. When Mr. Cook stormed out of the bar, he kicked the door so hard it broke.
 {¶ 24} The court allowed the testimony of Mr. Zickefoose and Mr. Scheidegger, overruling Mr. Cook's motions in limine, as their eyewitness testimony of Mr. Cook's physical abilities was contrary to what was presented by Mr. Cook. The criminal aspects of the incident and Mr. Cook's subsequent plea and conviction were supposedly redacted from Mr. Zickefoose's deposition before it was presented to the jury.
 {¶ 25} The record, however, in this case was poor and confusing. It is unclear what portions of Mr. Zickefoose's deposition were played for the jury. No mention of this is in the record, and Mr. Cook did not move for mistrial or even object following the playing of the videotape. Mr. Cook alleges in his first and second assignments of error that certain portions were not redacted per the parties' agreement and the trial court's order.
 {¶ 26} Thus, this portion of the trial remains unclear. *Page 8 
 {¶ 27} After meeting with counsel and reviewing the record, the trial court determined that only one edited copy of Mr. Zickefoose's deposition was provided to the court. Thus, the court could not state with certainty that the edited transcript was identical to the one given to the videographer for use in editing the DVD. Accordingly, the trial court denied Mr. Cook's motion to supplement the record, and further found that the various depositions included in the record were indicated in the transcript of proceedings and should be viewed as such.
 {¶ 28} Following the testimony of Mr. Zickefoose and Mr. Scheidegger, the parties entered into a stipulation that was read to the jury. The parties stipulated that on January 2, 2006, Officer Jeff Miller, of the Warren Police Department, responded to a complaint at the Up A Creek Tavern, involving suspect Mr. Cook. As part of Officer's Miller's investigation, he obtained information from Mr. Zickefoose and Mr. Scheidegger.
 {¶ 29} At the close of the plaintiff's case in chief, the court denied Mr. Blank's motions for directed verdict as they pertained to causation, injury suffered, treatment sought in regard to medical bills, and on issues of permanency and permanent disability. The court granted Mr. Blank's directed verdict as to the bills rendered for treatment by the physicians other than Dr. Snioff.
 {¶ 30} At the close of the defense's case, Mr. Blank renewed his motions for a directed verdict, which the court denied. Mr. Blank also raised a new motion for a directed verdict, arguing that there was a lack of proper medical testimony to support Mr. Cook's claim of lost wages until his disability retirement in 2005. The court granted that motion, finding that Mr. Cook had failed to introduce sufficient evidence in regard to the lost wages, and that the evidence Mr. Cook did present was speculative since there *Page 9 
was no testimony as to how long Mr. Cook could have worked, what the present value of that sum might be, or any documents such as a W-2, income tax, or expert testimony about future wage loss and pain and suffering in the future.
 {¶ 31} The jury returned a verdict in favor of Mr. Blank, finding that the accident Mr. Blank negligently caused on August 4, 1999, did not proximately and directly cause Mr. Cook's injuries and subsequent disabilities.
 {¶ 32} At the close of trial, Mr. Cook orally made a motion for a judgment notwithstanding the verdict ("JNOV"), which the court denied.
 {¶ 33} Mr. Cook now timely appeals, raising five assignments of error:
 {¶ 34} "[1.] The trial court abused its discretion and committed reversible error by permitting the introduction of evidence that was both highly prejudicial and inflammatory and improperly fanned the jury's passion, bias, and prejudice.
 {¶ 35} "[2.] The trial court abused its discretion and committed reversible error by failing to bar the testimony, or correctively instruct the jury regarding certain testimony presented via videotape deposition to the jury over the trial court's own sustained objections.
 {¶ 36} "[3.] The trial court abused its discretion and committed reversible error by failing to grant Appellant's motion for judgment notwithstanding the verdict.
 {¶ 37} "[4.] The trial court abused its discretion and committed reversible error by barring the admission of testimony and evidence relating to Appellant's loss of earnings and lost earning capacity. *Page 10 
 {¶ 38} "[5.] The trial court abused its discretion and committed reversible error by barring the introduction of certain medical and medical expert testimony on behalf of Appellant."
 {¶ 39} Introduction of the Bar Fight Evidence
 {¶ 40} In his first assignment of error, Mr. Cook contends that portions of Mr. Zickefoose's taped deposition that were supposed to be redacted were inadvertently played for the jury. Although he does not identify with any specificity those portions, a court's ruling striking any testimony, or a stipulation as to what was to be redacted, he claims this resulted in such prejudicial testimony that a reversible error occurred, warranting a new trial. We find this contention to be without merit.
 {¶ 41} We review Mr. Cook's first assignment of error under an abuse of discretion standard. "The determination to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed by an appellate court absent a showing of an abuse of discretion." State v. Janick, 11th Dist. No. 2007-A-0070,2008-Ohio-2133, ¶ 23, citing State v. Vinson, 11th Dist. No. 2006-L-238,2007-Ohio-5199, ¶ 48, citing State v. Sledge, 11th Dist. No. 2001-T-0123, 003-Ohio-4100, ¶ 20, State v. Rootes (Mar. 23, 2001), 11th Dist. No. 2000-P-0003, 2001 Ohio App. LEXIS 1391, 4-5, citing Renfro v.Black (1990), 52 Ohio St.3d 27, 32. An abuse of discretion connotes more than error of law or of judgment, rather it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id., citingState v. Montgomery (1991), 61 Ohio St.3d 410, 413, quoting State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 42} Prior to Mr. Zickefoose's deposition, Mr. Cook's counsel generally objected to the testimony and the use of the testimony at trial. During the deposition, *Page 11 
not only did Mr. Zickefoose testify that he observed no visible physical limitations of Mr. Cook, he also recalled the encounter with Mr. Cook in the parking lot, where he was twice threatened with the gun.
 {¶ 43} Apparent from the record is that there was some agreement at trial between counsel concerning some redaction relating to the specific testimony about the gun that was elicited during cross-examination by Mr. Cook's attorney. Oddly, however, there was no discussion concerning the deletion of the gun testimony that was elicited by Mr. Blank's attorney on direct examination.
 {¶ 44} The only mention by the court regarding this testimony is the court's following statement: "And I guess with regard to Zickefoose and the other witness from the bar, I don't recall if we ever put it on the record, but the fundamental reason why the court allowed it with all of these redactions and related was solely to demonstrate that there was eyewitness testimony about his physical abilities or inabilities that were brought in that were contrary to what was represented by the testimony of the Plaintiff, and I think for that reason they were entirely appropriate because we redacted out all of the portions that dealt specifically with the criminal angle that was involved in that case, so that was the legitimate purpose of them being admitted."
 {¶ 45} Following the jury's viewing of Mr. Zickefoose's deposition, the parties entered into a stipulation, which the court read to the jury. The parties stipulated that on January 2, 2006, Officer Miller responded to a complaint at Up A Creek Tavern, and as part of his investigation, identified Mr. Cook and interviewed Mr. Zickefoose and his uncle, Mr. Scheidegger. *Page 12 
 {¶ 46} No mention of these inadvertently played portions of testimony was made thereafter until Mr. Cook filed a motion to correct and modify the trial record pursuant to App. R. 9(E) on November 29, 2007. Mr. Blank responded, filing his opposition on February 25, 2008. Mr. Cook filed another motion to correct and modify the trial record pursuant to App. R. 9(E) on March 3, 2008. In the interim, he submitted his appeal on March 26, 2007, and filed a motion to supplement the record with this court on April 7, 2008.
 {¶ 47} We remanded the matter on April 30, 2008, because the trial court had not ruled on Mr. Cook's motions to supplement the record. In addition, the various depositions included with the file, although listed on the docket and numbered by the clerk, do not appear to have been filed with the trial court.
 {¶ 48} Accordingly, the trial court held a status conference on the matter on May 15, 2008. The court found that it could not state with certainty that the edited transcript Mr. Blank provided of Mr. Zickefoose's deposition was the one that was given to the videographer for use in editing the DVD, and that was the only deposition that was provided by either party. Thus, the trial court denied Mr. Cook's motion to supplement the record, and found that the depositions that are part of the record in this case are indicated at various locations in the transcript of the jury trial, which comprises the record in this case.
 {¶ 49} As the trial court noted, the only transcript that was filed was the unredacted transcript of Mr. Zickefoose's deposition. The redacted deposition was not entered into evidence and the only mention of the redactions is a very unclear and imprecise discussion between the parties during the trial as to the redactions to be *Page 13 
given to the videographer. In addition, Mr. Cook did not object or move for mistrial following the playing of the deposition for the jury.
 {¶ 50} Without more, we cannot say that the trial court abused its discretion in admitting Mr. Zickefoose's taped deposition. Further, the jury could infer that some criminal action may have been pursued against Mr. Cook due to the parties' stipulation following the playing of the deposition. Ultimately, Mr. Cook's motion in limine set the parameters of Mr. Zickefoose's testimony insofar as his motion asked the court to bar any reference to the plea-bargained criminal convictions, which was granted. No mention of Mr. Cook's charges or subsequent conviction was made. Moreover, the redacted portions that were allegedly inadvertently played cannot be said to rise to plain error as there is more than enough evidence to support the jury's verdict that Mr. Cook was not injured from the subject accident at issue in this case.
 {¶ 51} "Where the court of appeals has before it neither a verbatim transcript nor a narrative or agreed statement of the evidence as provided for in App. R. 9(B), (C), and (D), it cannot favorable [sic] consider appellant's contention * * *." State v. Manis, Jr. (Dec. 6, 1985), 11th Dist. No. 1221, 1985 Ohio App. LEXIS 9576, 5, quotingFlair Corporation v. Brecksville (1976), 49 Ohio App.2d 77.
 {¶ 52} Mr. Cook's first assignment of error is without merit.
 {¶ 53} Curative Jury Instructions
 {¶ 54} In his second assignment of error, Mr. Cook makes a similar argument regarding Mr. Zickefoose's taped deposition, and goes further in arguing that the trial court should have given a curative instruction to the jury regarding the testimony that *Page 14 
was inadvertently presented, and yet supposedly prohibited. We find this contention to be without merit.
 {¶ 55} At the outset we note that Mr. Cook failed to provide any legal authority to support his argument. For that reason alone, this assignment of error should be disregarded. As we recently stated inParkman Props. v. Tanneyhill, 11th Dist. No. 2007-T-0098,2008-Ohio-1502, "App. R. 16(A)(7) * * * states that an appellant's brief must contain `[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.'" Id. at ¶ 43.
 {¶ 56} Accordingly, we may disregard an assignment of error that fails to comply with App. R. 16(A)(7). Id. at ¶ 44, citing Village of SouthRussell v. Upchurch, 11th Dist. No. 2001-G-2395 and 2001-G-2396, 2003-Ohio-2099, ¶ 9.
 {¶ 57} In any case, we note that Mr. Cook's argument is without merit since he did not object or request a curative instruction. Although he argues the trial court should have at least given the jury such an instruction after allowing the testimony that the court itself prohibited, there is no indication that the court prohibited the testimony, or that a portion was inadvertently played that should have been redacted. The record reveals no objection or discussion between the court and counsel regarding Mr. Zickefoose's testimony following the playing of the videotaped testimony, and the only reference that is contained on the record is that the court allowed the testimony as to observations of Mr. Cook's physical abilities. Such testimony is admissible in light of the *Page 15 
fact that Mr. Cook opened the door to such rebuttal when he himself testified as to his physical abilities.
 {¶ 58} Without more, we cannot find that Mr. Cook's second assignment of error is with merit.
 {¶ 59} Judgment Notwithstanding the Verdict
 {¶ 60} In his third assignment of error, Mr. Cook argues that the trial court abused its discretion and committed reversible error in denying his motion for a judgment notwithstanding the verdict. Specifically, Mr. Cook alleges that the evidence is insufficient to support such a verdict in light of the highly prejudicial testimony of Mr. Zickefoose, and because Mr. Blank admitted he was negligent in causing the accident. He argues that he provided evidence and testimony that the accident proximately caused his injuries, and thus, the jury lost its way when it concluded that Mr. Cook's injuries and the accident were not causally related.
 {¶ 61} "A motion for a judgment notwithstanding the verdict is reviewed under the same standard as that of a motion for a directed verdict." Lanzone v. Zart, 11th Dist. No. 2007-L-073, 2008-Ohio-1496, ¶ 54, quoting Marks v. Swartz, 11th Dist. No. 2007-T-0008,2007-Ohio-6009, ¶ 25, citing Texler v. D.O. Summers Cleaners ShirtLaundry Co. (1998), 81 Ohio St.3d 677, 679; see, also, Blatnik v.Dennison, 148 Ohio App.3d 494, 504, 2002-Ohio-1682.
 {¶ 62} "Thus, where a party seeks JNOV, `[t]he evidence adduced at trial and the facts established by the admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which *Page 16 
reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.'" Id. at ¶ 55, citing Posin v. A.B.C. Motor CourtHotel (1976), 45 Ohio St.2d 271, 275.
 {¶ 63} "[A] motion for * * * judgment notwithstanding the verdict does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence." Id. at ¶ 56, quoting Blatnik at 504, citing O'Day v.Webb (1972), 29 Ohio St.2d 215, paragraph three of the syllabus. Thus, we review a motion for JNOV de novo. Id.
 {¶ 64} At the outset, we must note that the trial court only had before it an oral motion for a JNOV as no written post-trial motions were submitted for a JNOV or a new trial. Although Mr. Cook contends that the clear testimony of the witnesses mandates that the trial court should have granted his motion for JNOV, we find that there is more than sufficient competent, credible evidence to support the jury's verdict in favor of Mr. Blank, finding that his negligence was not the proximate and direct cause of Mr. Cook's chronic back condition. Specifically, there is unrefuted evidence that Mr. Cook has been involved in several accidents, both before and after the August 4, 1999 accident, from which he repeatedly suffered lower back injuries.
 {¶ 65} Before the 1999 accident, Mr. Cook was in an elevator accident in 1992, a car accident in 1994 or 1995, and a jet-ski accident in 1998. The 1992 MRI demonstrated a disc protrusion at L5, L1, and his medical records performed after the 1998 jet-ski accident revealed both herniations at L5, L1, and a new disc protrusion at L3, L4. *Page 17 
 {¶ 66} Several accidents also occurred after the August 4, 1999 accident. On June 2, 2001, Mr. Cook testified that he severely sneezed after which he immediately felt extreme lower back pain. As a result, he went to the hospital where he had an urgent MRI and cardial epidural. Several months later, on September 14, 2001, he twisted at an unfortunate angle at the dinner table, which caused him to again feel severe pain in his lower back. His bad luck continued, and on February 13, 2002, Mr. Cook fell on the ice while at work. One month later, he underwent another MRI, which showed a drastic worsening of his spinal problems, and a surgery was performed several weeks later. Two months later, on May 1, 2002, Mr. Cook was in another motor vehicle accident. A MRI taken after that accident revealed his spinal surgery failed.
 {¶ 67} Although Mr. Cook's expert witness and treating physician, Dr. Snioff, testified that in his opinion, Mr. Cook's back problems were a direct and proximate result of Mr. Blank's negligence in the August 4, 1999 accident, he did not form his opinion based on Mr. Cook's complete medical history. Specifically, Dr. Snioff based his opinion on one MRI that was taken in 2002. He was not aware of Mr. Cook's prior accidents or resultant injuries, and relied instead, on patient history as relayed by Mr. Cook, and his treatment records subsequent to the accident. He became aware of Mr. Cook's prior accidents and resulting injuries only when he began reviewing Mr. Cook's medical records for his deposition.
 {¶ 68} Mr. Blank's defense medical expert, Dr. Donich, who reviewed Mr. Cook's medical history for the defense, opined that the August 4, 1999 accident was not the cause of Mr. Cook's injury. He was also of the opinion that the car crash, as described by Mr. Cook, could not have caused the injuries he claims resulted from the accident. *Page 18 
Neither Mr. Zickefoose nor Mr. Scheidegger observed any physical limitations on the night of January 2, 2006, and although his mother testified regarding his physical limitations, she was unaware of his elevator accident in 1992, his 1995 motor vehicle accident, the February 11, 2002 fall on the ice he suffered at work, or the accident that occurred on May 1, 2002, two months after his surgery.
 {¶ 69} After construing the evidence most strongly in favor of Mr. Blank, reasonable minds could come to only one conclusion on the issue of proximate cause and we find no error in the trial court's ruling.
 {¶ 70} Mr. Cook argues that this case is similar to Bryan-Wollman v.Dmonko, 167 Ohio App.3d 261, 2006-Ohio-2318, rev'd on other grounds,115 Ohio St.3d 291, 2007-Ohio-4918, where the appellate court reversed the jury's verdict in favor of appellant, determining that a JNOV should have been granted because there was no question that the appellant negligently caused the appellee's injury. The issue there, rather, was to what extent the appellee was injured from the accident. This case is markedly different because while Mr. Blank does not contest his negligence in causing the accident. There is scant evidence that Mr. Cook's injuries were proximately caused by the accident. Indeed, none of the defense experts in that case opined the appellee did not suffer an injury from the accident; rather they disputed only as to what extent she was injured. Id. at ¶ 19-20.
 {¶ 71} Moreover, what is absent in Mr. Cook's case is any claim or supporting expert testimony of an aggravation of a preexisting condition and its consequent effects. This "all or nothing" approach failed. Thus, the trial court correctly denied Mr. Cook's *Page 19 
motion for a judgment notwithstanding the verdict as the standard for a JNOV was not met.
 {¶ 72} Mr. Cook's third assignment of error is without merit.
 {¶ 73} Evidence of Lost Wages
 {¶ 74} In his fourth assignment of error, Mr. Cook argues that trial court abused its discretion by barring the admission of testimony and evidence that reflected his loss of income, lost job opportunities, and lost future earnings due to his back condition. Thus, he contends that the trial court committed reversible error when Mr. Blank was granted a directed verdict on the matter, which precluded the issue from being decided by the jury. We disagree with this contention.
 {¶ 75} "Pursuant to Civ. R. 50(A)(4), `[w]hen a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Jacobs v.Budak, 11th Dist. No. 2007-T-0033, 2008-Ohio-2756, ¶ 41, citingBliss v. Chandler, 11th Dist. No. 2006-G-2742, 2007-Ohio-6161, ¶ 46.
 {¶ 76} As previously noted, "[b]ecause a motion for a directed verdict presents a question of law, an appellate court must conduct a denovo review of the trial court's judgment." Id. at ¶ 46, citingBliss at ¶ 48, citing Huffman v. Kazak Bros. Inc., 11th Dist. No. 2000-L-152, 2002-Ohio-1683, ¶ 18, citing Nichols v. Hanzel (1996),110 Ohio App.3d 591, 599. *Page 20 
 {¶ 77} The court granted Mr. Blank's motion for a directed verdict as to the issue of Mr. Cook's injuries from the date of the accident until the date of his disability retirement at the age of thirty-five. Mr. Cook argues that through his testimony and that of Dr. Snioff, he established the amount of lost wages and future income he faces from his injuries. He contends that such damages to income are an element of a personal injury claim, and thus the issue should have been decided by the jury.
 {¶ 78} The court, however, did not agree with Mr. Cook's argument that those were issues that could be decided by the jury in this case because Mr. Cook failed to offer sufficient evidence for that issue to go to the jury. No expert testimony, W-2s, specific testimony by Mr. Cook, or other evidence of income was established or entered into evidence apart from the general averments of Mr. Cook. Thus, the court granted the directed verdict in favor of Mr. Blank on this issue because the evidence that was offered presented mere conjecture and speculation as to the nature and extent of future loss.
 {¶ 79} Specifically, the trial court stated in ruling in Mr. Blank's favor, "* * * Now, the general rule is, yeah, you can talk about it and you can certainly present evidence of future wage loss and also evidence of permanency and also evidence of pain and suffering in the future, I don't disagree with any of that. I am just talking factually that just because you are allowed to bring that in a lawsuit doesn't mean that you are allowed to you can do it without the absence of any evidence of that effect. So, that is my ruling."
 {¶ 80} Our review of the record reveals that Mr. Cook failed to submit, with any specificity, proof of his lost wages and future income. While he alleges he lost a *Page 21 
promotion due to his injuries, he failed to offer evidence of the salary of that position, or any evidence that his injuries were the reason he was not promoted. Mr. Cook submitted no financial documents or any lost wage and/or potential future earnings reports. The U.S. Life Tables were not offered to establish life expectancy.
 {¶ 81} We agree with the trial court that based on these general averments, the jury was rightly precluded from making a determination of this issue, as these types of damages would have been pure conjecture based on the lack of evidence in the record.
 {¶ 82} As Mr. Cook himself cited, the Supreme Court of Ohio succinctly stated in Day v. Gulley (1963), 175 Ohio St. 83, that "[i]n a personal injury action, where the plaintiffs injuries are subjective in character and there is no expert medical evidence as to future pain, suffering, permanency of injuries or lasting impairment of health, it is prejudicial error for the trial court to charge the jury in its general instructions, that `in determining the amount of damages the jury should consider the nature and extent of the injuries, whether or not the injuries are in all probability permanent or temporary only; the pain and suffering plaintiff has endured and with reasonable certainty will endure in the future.'" Lindy v. Corder (Feb. 16, 1983), 12th Dist. No. 81-10-0106, 1983 Ohio App. LEXIS 15910, 3, citing Day at syllabus.
 {¶ 83} Mr. Cook cites Lindy in support because the appellee's doctor in that case testified that appellee suffered from permanent injuries caused by appellant. There was no question that the accident caused the herniated disc, whereas here, there is great conflict as to the causes of Mr. Cook's condition.
 {¶ 84} Mr. Cook also cites Smith v. Lima Memorial Hospital (May 27, 1999), 3d Dist. No. 1-98-73, 1999 Ohio App. LEXIS 2367, for the proposition that Mr. Cook's *Page 22 
testimony regarding his lost promotion, missed workdays, and early retirement was sufficient for the issue to go the jury. This argument similarly fails for the same reason. In that case, the appellee was an eighty-seven year-old shoe cobbler. She did not enter any documentation of her earnings because such documentation did not exist, thus her memory was the best evidence. More fundamentally, the negligence, and most importantly the proximate cause, of the appellant were already established. Even in that case, the appellee testified to specific sums, which were not presented here.
 {¶ 85} Moreover, even if we were to find error in the court's ruling, the error would be harmless since the jury found Mr. Blank's negligence was not the cause of Mr. Cook's injuries. See Yost v. Bermudez, 11th Dist. No. 2002-T-0007, 2003-Ohio-6736, ¶ 36. Thus, the issue of damages was never even reached by the jury.
 {¶ 86} Mr. Cook's fourth assignment of error is without merit.
 {¶ 87} Expert Testimony
 {¶ 88} In his final assignment of error, Mr. Cook contends that the trial court abused its discretion by excluding major portions of Dr. Snioffs depositions. Specifically, Mr. Cook argues that the trial court committed reversible error in prohibiting Dr. Snioff from relying on medical records by other physicians, which he reviewed in order to present his own expert medical testimony as to his opinion of Mr. Cook's diagnosis and prognosis. We find this contention to be without merit.
 {¶ 89} Mr. Cook fails to cite with any specificity what portions of the deposition were redacted. Our review indicates that Dr. Snioff was not prohibited from relying on Mr. Cook's medical records. Rather, our review reveals that Dr. Snioff did rely on and did testify as to the medical records that he was given. The portions of the deposition *Page 23 
that were redacted are minor, and concern Dr. Snioffs testimony in regard to the medical expenses and bills Mr. Cook incurred for care by other providers after the accident, and not those that there were generated by Dr. Snioff. Thus, those portions were rightly redacted before they were presented to the jury. There are simply no other redactions indicated in Dr. Snioffs depositions.
 {¶ 90} Dr. Snioffs deposition, however, is replete with instances where he testifies as to his opinion, which he clearly states was in part based on Mr. Cook's medical records from his previous physicians. In the following excerpt, Dr. Snioff testifies as to the basis of his medical opinion: "Based on the opinions — based on the history that Shawn Cook provided me and the available information that I've reviewed from other physicians, it appeared that Mr. Cook's problems within a reasonable medical certainty began with his motor vehicle accident in August 1999."
 {¶ 91} Dr. Snioff then proceeds to review exactly what records he was given in forming his opinion. Moreover, there is no ruling by the trial court on Mr. Blank's motion in limine that purported to prohibit Dr. Snioff from testifying what the opinions of Mr. Cook's other physicians were. Thus, we are puzzled as to what Mr. Cook feels was prohibited and what specifically was redacted when our review indicates no such redactions. There is quite simply no evidence to substantiate his claim, and indeed, there is evidence in Dr. Snioffs own deposition that indicates the contrary. Fundamentally, "[t]he burden rests with the appellants to make an affirmative demonstration of the alleged error with citations to the record. App. R. 16(A)(7)." Cole *Page 24 v. Cole, 11th Dist. No. 2006-A-0079, 2007-Ohio-6929, ¶ 30. {¶ 92} Mr. Cook's fifth assignment is without merit. {¶ 93} The judgment of the Trumbull County Court of Common Pleas is affirmed.
 DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., Concur. *Page 1