OPINION
{¶ 1} Violet Grace Yost appeals the decision of the Trumbull County Common Pleas Court which, following a jury trial, entered judgment in favor of defendant-appellee A.J. Bermudez, M.D. We affirm.
 {¶ 2} In June 1995, Robert E. Yost was diagnosed as suffering from Interstitial Pulmonary Fibrosis[1] ("IPF"), and began treating with Dr. Bermudez, a pulmonologist. Dr. Bermudez started Mr. Yost on Prednisone therapy and Mr. Yost showed improvement. Dr. Bermudez referred Mr. Yost back to Mr. Yost's family physician in September 1996.
 {¶ 3} Mr. Yost returned to Dr. Bermudez in July 1997 and his condition had deteriorated. In September or October 1998, Dr. Bermudez determined that Mr. Yost was no longer responding to the Prednisone therapy and discussed the possibility of a lung transplant with Mr. Yost.
 {¶ 4} In November 1998, Mr. Yost was seen at the University of Pittsburgh Medical Center for an initial lung transplant evaluation. Mr. Yost was placed on the transplant list but died before he could receive a transplant.
 {¶ 5} On June 6, 2000, appellant, Mr. Yost's widow and the executrix of his estate, filed suit against Dr. Bermudez alleging claims of medical malpractice and wrongful death. Appellant contended that Dr. Bermudez was negligent in failing to refer Mr. Yost for a transplant at an earlier date and that this negligence caused Mr. Yost a loss of chance of survival.
 {¶ 6} After trial, the jury returned a verdict in favor of Dr. Bermudez and the trial court entered judgment on the verdict. Appellant appeals that judgment raising four assignments of error:
 {¶ 7} "[1.] The trial court erred in forbidding appellant from laying the foundation for impeaching the credibility of the appellee based upon public records of alcohol related incidents.
 {¶ 8} "[2.] The trial court erred in permitting appellee's expert witness, Dr. Schwarz, to testify about changes in the standard of care when he failed to answer this question in discovery deposition and did not supplement his answer prior to trial.
 {¶ 9} "[3.] The trial court prejudiced appellant's ability to adequately argue damages to the jury by precluding her from requesting a specific sum in closing argument, in the absence of a formula calculation, and with a corrective jury instruction.
 {¶ 10} "[4.] The jury instructions given were improper because the jury was told to calculate the loss of chance of survival from the date of negligence, not from the date when the loss of chance actually began."
 {¶ 11} Appellant first argues that the trial court erred by precluding her from eliciting evidence relating to appellee's use of alcohol. Specifically, appellant argues that the trial court should have permitted her to present evidence of appellee's alleged involvement in an altercation at a bar and appellee's arrest for driving under the influence. We disagree.
 {¶ 12} We review a trial court's decision to admit or exclude evidence only for an abuse of discretion. Wightman v. Consolidated RailCorp. (1999), 86 Ohio St.3d 431, 437.
 {¶ 13} Evid.R. 402 prohibits the admission of irrelevant evidence. Appellee's use of alcohol has no relevance under the facts of the instant case.
 {¶ 14} Appellant argues that she should have been permitted to use such evidence to impeach appellee's credibility. "Evidence of the character of a witness on the issue of credibility is admissible as provided in Rules 607, 608, 609." Evid.R. 404(A)(3). We can discern no basis for the admission of such evidence under any of these rules.
 {¶ 15} Evid.R. 607(A) states:
 {¶ 16} "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid. R. 801(D)(1)(a), 801(D)(2), or 803."
 {¶ 17} Appellant argues that because appellee was allegedly involved in an altercation at a bar and because he was arrested for driving under the influence, he is less credible. We fail to see the correlation between these incidents and appellee's credibility. Therefore, the evidence was not admissible pursuant to Evid.R. 607.
 {¶ 18} Evid.R. 608 provides:
 {¶ 19} "(A) Opinion and reputation evidence of character
 {¶ 20} "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
 {¶ 21} "(B) Specific instances of conduct
 {¶ 22} "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
 {¶ 23} "The giving of testimony by any witness, including an accused, does not operate as a waiver of the witness's privilege against self-incrimination when examined with respect to matters that relate only to the witness's character for truthfulness."
 {¶ 24} The evidence appellant sought to introduce is not opinion or reputation evidence; therefore, Evid.R. 608(A) does not apply. Further, as discussed above, this evidence does not relate to appellee's character for truthfulness; therefore, Evid.R. 608(B) does not apply.
 {¶ 25} Evid.R. 609 allows for the admission of evidence of conviction of crime in certain circumstances, none of which apply in the instant case. Therefore, appellant's first assignment of error is without merit.
 {¶ 26} In her second assignment of error appellant contends that the trial court erred in permitting appellee's expert to testify as to changes in the standard of care between 1995 and 1998, for patients such as Mr. Yost. We disagree.
 {¶ 27} "The decision of whether or not to admit evidence rests in the sound discretion of the court and will not be disturbed absent an abuse of that discretion." Wightman, supra.
 {¶ 28} The rules of civil procedure require a party to seasonably supplement his responses to any questions directly addressed to the subject matter on which an expert is expected to testify. Civ.R. 26(E)(1). See, also, Shumaker v. Oliver B. Cannon Sons, Inc.
(1986), 28 Ohio St.3d 367, 370. "This duty * * * is necessary because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced." Id. The trial court may exclude expert testimony as a sanction for the violation of Civ.R. 26(E)(1). Id.
 {¶ 29} We note initially that neither the deposition of Dr. Schwarz nor appellee's responses to interrogatories or discovery requests are part of the record in this case. Therefore, our review of this assignment of error is limited to the arguments made by counsel as found in the trial transcript.
 {¶ 30} At deposition, appellant apparently asked Dr. Schwarz about changes in the standard of care for patients with IPF. Dr. Schwarz responded that he knew there were changes in the standard of care between 1995 and 1998 but that he was not able to state exactly what those changes were. Dr. Schwarz stated that he would have to review the standards to determine what the changes were. However, Dr. Schwarz did testify at deposition that the changes were in the characterization of the disease, the failure to respond to therapy, the issue of progressive course, and the level of pulmonary function. At trial, Dr. Schwarz testified as to the changes in the standard of care. Specifically, Dr. Schwarz testified that rather than treat a patient with steroids for up to three years before referring them for a transplant, he would immediately talk to the patient about a transplant if the patient met the age criteria. Dr. Schwarz testified that this was not the standard in 1995.
 {¶ 31} On the record before us, we cannot say that Dr. Schwarz's testimony amounted to surprise. Appellant was aware that Dr. Schwarz would opine that there were changes in the standard of care between 1995 and 1998 and as to the nature of these changes. Therefore, the trial court did not abuse its discretion in admitting this evidence. Appellant's second assignment of error is without merit.
 {¶ 32} In her third assignment of error, appellant contends that the trial court erred when it precluded her from requesting a specific sum for damages in closing argument. This assignment of error is without merit.
 {¶ 33} Counsel is afforded great latitude in closing argument. Pangv. Minch (1990), 53 Ohio St.3d 186, 194. "The assessment of whether these bounds have been exceeded is, in the first instance, a discretionary function to be performed by the trial court." Id. We review the trial court's determination only for an abuse of discretion. Id.
 {¶ 34} "In closing rebuttal, it is outside the scope of permissible argument to interject, for the first time, a specific monetary figure that the jury should award as damages. Miko v. Lincoln Nat. Corp. (March 6, 1997), 8th Dist. No. 70826, 1997 WL 97243, at 4, citing Grossnicklev. Village of Germantown (1965), 3 Ohio St.2d 96. The primary reason for this prohibition is that opposing counsel does not have the opportunity to respond to such arguments. Id.
 {¶ 35} In the instant case appellant did not make a specific monetary demand during her initial closing argument. Therefore, the trial court did not abuse its discretion by precluding appellant from asking for a specific amount during rebuttal.
 {¶ 36} We also note that the jury returned a verdict in favor of appellee. Therefore, even had the trial court erred in precluding such argument, the error would have been harmless. Appellant's third assignment of error is without merit.
 {¶ 37} In her final assignment of error, appellant argues that the trial court erred in instructing the jury on the loss of chance of survival claim. The trial court instructed the jury as follows:
 {¶ 38} "Now in order to maintain an action for loss, for a loss of a less than even chance of recovery or survival, the plaintiff must prove by a preponderance of the evidence that Dr. Bermudez's negligent act or omission increased the risk of harm to plaintiff. Furthermore, it must be established by a preponderance of the evidence that the negligent act was a cause of the plaintiff's decedent's death.
 {¶ 39} "The amount of damages recoverable by the plaintiff in a loss of chance case equals the total sum of damages for the underlying death assessed from the date of the negligent act or omission multiplied by the percentage of the lost chance. In this case, the doctrine of lost chance would apply for the period between five and ten years from the date of alleged [sic] negligent act or omission."
 {¶ 40} Appellant argues that the court should have instructed the jury that the loss of chance damages should be calculated, not from the date of the negligence but instead from the date that the effects of the negligence cost Mr. Yost his life, i.e., 1998. We disagree.
 {¶ 41} The Ohio Supreme Court first recognized a claim for loss of chance in Roberts v. Ohio Permanente Med. Group, Inc. (1996),76 Ohio St.3d 483. The Court held:
 {¶ 42} "1. In order to maintain an action for the loss of a less-than-even chance of recovery or survival, the plaintiff must present expert medical testimony showing that the health care provider's negligent act or omission increased the risk of harm to the plaintiff. It then becomes a jury question as to whether the defendant's negligence was a cause of the plaintiff's injury or death. (Cooper v. Sisters of Charityof Cincinnati, Inc. [1971], 27 Ohio St.2d 242, 56 O.O.2d 146,272 N.E.2d 97, overruled.)
 {¶ 43} "2. The amount of damages recoverable by a plaintiff in a loss-of-chance case equals the total sum of damages for the underlying injury or death assessed from the date of the negligent act or omission multiplied by the percentage of the lost chance.
 {¶ 44} "3. To ascertain the amount of damages in a case of lost chance of survival or recovery, the trial court must instruct the trier of fact to consider the expert testimony presented and (1) determine the total amount of damages from the date of the alleged negligent act or omission, including but not limited to lost earnings and loss of consortium; (2) ascertain the percentage of the patient's lost chance of survival or recovery; and (3) multiply that percentage by the total amount of damages." Id., at syllabus.
 {¶ 45} As we have discussed, the jury returned a verdict in favor of Dr. Bermudez. Therefore, even had the trial court erred in instructing the jury on damages, such error would be harmless.
 {¶ 46} Finally, the trial court's instruction on this claim tracked the syllabus case law established by the Ohio Supreme Court in Roberts.
Appellant's fourth assignment of error is without merit.
 {¶ 47} Appellant's assignments of error are without merit. The judgment of the Trumbull County Common Pleas Court is affirmed.
Judgment affirmed.
Donald R. Ford, P.J., and William M. O'Neill, J., concur.
[1] Interstitial Pulmonary Fibrosis is defined as, "A group of disorders characterized by inflammation and eventually scarring of the deep lung tissues, leading to shortness of breath." http://www.pennhealth.com/ency/article/000128.htm (visited Sept. 11, 2003).