[Cite as *State v. Tipton*, 2013-Ohio-3207.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-P-0072** |
| JOSHUA B. TIPTON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2011 CR 0801.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Richard E. Hackerd,* 231 South Chestnut Street, Ravenna, OH 44266-3023 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Joshua B. Tipton, appeals his conviction, following a jury trial, in the Portage County Court of Common Pleas of illegal manufacture of methamphetamine. At issue is whether appellant's trial counsel provided effective assistance. For the reasons that follow, we affirm.

{¶2} On December 23, 2011, appellant was indicted for illegal manufacture of methamphetamine ("meth") in the vicinity of a school, a felony of the first degree, in

violation of R.C. 2925.04. Appellant pled not guilty. The case was tried to a jury in May 2012.

{¶3} Detective Joan Bauer of the Ravenna Police Department testified that on December 12, 2011, a confidential informant ("CI") told her that appellant was trying to sell a firearm and the CI asked if Detective Bauer was interested. After the detective said she was interested, the CI contacted appellant and appellant's associate, Laurie Claeys, and said she had a friend who would buy the gun. At that time appellant and Claeys told the CI that they were selling meth and would sell the CI's friend, i.e., Detective Bauer, four grams for $400. After the CI relayed this information, Detective Bauer agreed to buy both items.

{¶4} On December 14, 2011, Detective Bauer met with the CI, who had been in contact with Claeys and appellant about buying the meth. The purchase was to take place that day at a single-family residence on West Elm Street in Kent, Ohio, which was owned by one Kenneth Brewster. Detective Bauer was with the CI while the CI placed several telephone calls to appellant, Claeys, and Brewster, to set up a time when Detective Bauer and the CI would meet them.

{¶5} Detective Bauer testified that at about 7:30 p.m., appellant called the CI using Claeys' cell phone. Detective Bauer said she is familiar with appellant's voice from her previous undercover contacts with him. She heard appellant tell the CI that she and her "friend" should come to the house in 20 minutes and that the meth "would be done" at that time.

{¶6} Detective Bauer testified that she was working with other law enforcement agencies in connection with this operation, including the Kent Police Department, the

2

Portage County Sheriff's Office, the Metro SWAT Unit, and Federal ATF agents, all of whom already had the house under surveillance. At about 7:30 p.m., the cover team advised Detective Bauer that Claeys and appellant were in the residence.

{¶7} At about 8:00 p.m., Detective Bauer and the CI went to Brewster's residence to make the buy. Upon arrival, Brewster opened the door and let them in. Upon entering the house, appellant was in the kitchen by the sink. He was pacing back and forth; acting "very erratic" and "agitated;" and staring out the window. Appellant then went in the bathroom and locked the door. Claeys was already in the bathroom at that time.

{¶8} After awhile, Claeys came out of the bathroom and said it was taking them longer than expected to finish the meth. She said they could "pull it off right now," but Detective Bauer would not be happy because she would not receive as much meth. As a result, Claeys said they should wait. Claeys said appellant was in the bathroom "burping the bottle," referring to the step in the manufacturing process where pressure is released from the plastic pop bottle used to "cook" the meth by slightly opening the bottle cap.

{¶9} Shortly thereafter, appellant came out of the bathroom; walked around for awhile; talked to Claeys; and then he and Claeys returned to the bathroom. After awhile, Claeys called the CI to come to the bathroom door. The CI walked to the bathroom and Detective Bauer followed her. Claeys said the meth should cook longer. She said, "the longer it cooks, the better it is." At that point, Detective Bauer saw appellant inside the bathroom bending over the bottle being used to manufacture the meth with his hand on the bottle. Detective Bauer testified, "[appellant] was probably

3

burping it, but [she] didn't see the whole process." The detective said that appellant and Claeys were "cooking meth right in front of [her]."

{¶10} About one-half hour later, Claeys came out of the bathroom again, and said it would take another hour to complete the manufacturing process. Detective Bauer asked about the price of the meth. Claeys said she was not sure of the price because all three of them, appellant, Claeys, and Brewster, had gone in on this together and they had to charge extra for the pseudoephedrine, which is used in making meth.

{¶11} Detective Bauer told Claeys that she and the CI would return in about an hour to pick up the meth. She and the CI left the residence, and the detective contacted the cover team to advise they had just left the house. The cover team approached the house and ordered appellant to come out.

{¶12} Laurie Claeys testified that she pled guilty to illegal manufacture of methamphetamine, a first-degree felony, based on her involvement in this case. She said she is awaiting sentencing and that no one had made any promises to her regarding her sentence.

{¶13} Claeys said that on December 14, 2011, she and appellant went to Brewster's house. They planned to make four grams of meth and to sell it for $400. She said that she, appellant, and Brewster all agreed to do this. She said she had previously made arrangements with a friend of hers, who turned out to be the CI, who was going to bring someone to the house to buy the meth.

{¶14} Claeys testified that the day before, December 13, 2011, she and appellant purchased the lye and other ingredients they needed to make the meth. She said that during the day on December 14, 2011, she, a friend of hers, appellant, and his

4

girlfriend went to different pharmacies and bought pseudoephedrine, which was to be used in making the meth.

{¶15} Claeys said she talked to the CI several times during the day on December 14, 2011. She said she kept telling her they were delayed. This was because they had difficulty finding people to get pseudoephedrine for them.

{¶16} Claeys testified that by 7:00 p.m., she and appellant had all the ingredients they needed to make meth. The ingredients are lye, lithium strips from the inside of batteries, acid, lantern fuel, and ammonium nitrate, which is a granular chemical found in cold packs. At that time she and appellant started to make the meth in the bathroom.

{¶17} Claeys stated that when they started making the meth, the bathroom door was closed, but, after awhile, she opened it due to the fumes that resulted from releasing pressure in the pop bottle. Claeys said that appellant helped her by putting the ingredients for the meth in the bottle and by releasing the pressure from the bottle.

{¶18} Claeys testified that Detective Bauer and the CI arrived about 8:00 p.m. At that time she was still in the bathroom. Brewster told Claeys that Bauer and the CI had arrived. Claeys came out of the bathroom and talked to the CI and the detective in the kitchen. Claeys told them the meth was not ready. She said they could pull it off now, but they would only get a small amount. Claeys said they should wait. After a few similar delays, the detective and the CI said they would leave and come back when it was done.

{¶19} Claeys testified that after the detective and the CI left, she and appellant were in the bathroom taking turns releasing pressure from the bottle. Suddenly, they

heard banging on the door. She went to the door and appellant darted from the bathroom to the basement trying to run away. Brewster let the agents in and Claeys was arrested.

{¶20} Stephen Lincoln of the Portage County Sheriff's Office testified he searched the residence pursuant to a search warrant. He said an active, cooking meth lab, i.e., the pop bottle, was found in the bathroom. He said the contents of the bottle were still bubbling or cooking, meaning the lithium strips were still reacting to the fuel and water in the bottle. He said the cooking meth lab was near the end of the cooking process. He took the bottle out of the house and opened the bottle to neutralize its contents to avoid an explosion.

{¶21} The state presented evidence that Brewster's house is about 800 feet away from the Holden Elementary School, which is a public school owned by the Kent City Board of Education.

{¶22} The supervisor of the State Fire Marshall's forensic lab testified that the pop bottle contained chemicals used in manufacturing meth.

{¶23} Appellant did not testify or present any witnesses on his behalf. Thus, the testimony of the state's witnesses was undisputed.

{¶24} The jury found appellant guilty of illegal manufacture of meth in the vicinity of a school, a first-degree felony. The court sentenced appellant to a mandatory term of six years in prison and a mandatory drug fine of $10,000, but suspended the fine as a result of the court's finding that appellant is indigent.

{¶25} Appellant appeals his conviction, asserting four assignments of error. For his first assignment of error, he alleges:

{¶26} "Defense counsel's assistance was ineffective when he failed to object to wholesale portions of the prosecution's case which was presented in violation of basic rules of evidence and this deficiency was prejudicial to the defendant and denied him a fair trial."

{¶27} The standard of review for ineffective assistance of counsel was stated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and has been repeatedly followed by this court. *State v. Schlee*, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *30-*31 (Dec. 23, 1994); *State v. McKinney*, 11th Dist. No. 2007-T-0004, 2008-Ohio-3256, ¶187.

{¶28} In order to support a claim of ineffective assistance of counsel, the defendant must satisfy a two-prong test. First, he must show that counsel's performance was deficient. *Strickland, supra*. This requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *Id*. A defendant bears the burden of proving that trial counsel's assistance fell below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989), citing *Strickland*, *supra*, at 687-688. Because there are many ways to provide effective assistance, there is a strong presumption that trial counsel's performance fell within the wide range of reasonable professional assistance. *Bradley*, *supra*, citing *Strickland*, *supra*, at 689.

{¶29} Second, the defendant must show the deficient performance prejudiced the defense. In order to satisfy this prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's * * * errors, the result of the [trial] would have been different." *Strickland* at 694; accord *Bradley*, paragraph three of the syllabus.

7

**{¶30}** It is well settled that strategic and tactical decisions do not constitute a deprivation of the effective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). Errors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel. *Id.*; accord *State v. Vinson*, 11th Dist. No. 2006-L-238, 2007-Ohio-5199, ¶31.

**{¶31}** In *Clayton*, *supra*, the Court held: "* * * the fact that there was another and better strategy available [to counsel] does not amount to a breach of an essential duty to his client." *Id.* A reviewing court must not second-guess trial strategy decisions. *Id.*

**{¶32}** Generally, the failure to make objections during trial does not constitute ineffective assistance of counsel since the failure may be a tactical decision. *See State v. Gumm*, 73 Ohio St.3d 413, 428 (1995). "The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance." *State v. Wright*, 11th Dist. No. 2000-P-0128, 2002 Ohio App. LEXIS 1497, *18 (Mar. 29, 2002). This is because objections tend to disrupt the flow of a trial and are considered technical and bothersome by a jury, causing an attorney to reasonably hesitate to object. *Id.* There is a strong presumption that trial counsel's failure to object was a strategic and tactical decision, and the defendant has the burden to present evidence to overcome this presumption. *Id.*

**{¶33}** Each of trial counsel's purported deficiencies involved his alleged failure to object to the admission of evidence. The trial court has broad discretion in the admission and exclusion of evidence, and we review such decision only for an abuse of discretion. *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967); *Yost v. Bermudez*, 11th Dist. No. 2002-T-0007, 2003-Ohio-6736, ¶12.

8

{¶34} First, appellant argues his trial counsel was ineffective because he did not object to Detective Bauer's testimony that the CI told her that appellant was trying to sell a firearm and that appellant had told the CI the gun had "bodies on it," meaning, in street language, that it had been used in a shooting. Appellant argues trial counsel should have objected because this testimony was "highly prejudicial." However, as noted above, it is presumed that counsel's failure to object was a tactical and strategic decision. Further, the testimony was offered as background to show the circumstances in which the CI first contacted Detective Bauer. Also, appellant was not charged with the sale or attempt to sell a gun. Further, there is no evidence that appellant's sale of a gun would be unlawful. Appellant failed to present evidence to overcome the presumption that trial counsel's failure to object was a strategic and tactical decision.

{¶35} Next, appellant argues his trial counsel was ineffective in not objecting to Detective Bauer's testimony that the CI told her on the phone that Claeys would sell her four grams of meth for $400. However, Claeys testified at trial that she agreed to sell four grams to Detective Bauer and the CI for $400. Since Claeys testified concerning these same details of the buy, she was subject to cross-examination, and any error in admitting this testimony was harmless. Appellant has failed to overcome the presumption that trial counsel's failure to object to Detective Bauer's testimony was a strategic and tactical decision.

{¶36} Next, appellant argues that trial counsel did not properly object to Detective Bauer's testimony that Claeys told her when she came out of the bathroom that appellant was in the bathroom burping the bottle. Appellant concedes that trial counsel objected, but argues trial counsel should have specifically stated the objection

9

was based on hearsay. However, appellant does not reference any authority for the proposition that a party must state the basis for his objections at trial. Since counsel objected to this testimony at trial, his performance was not deficient and he was therefore not ineffective in this regard. In any event, this testimony was harmless because Claeys herself testified at trial that appellant was in the bathroom burping the bottle and Detective Bauer also testified she saw appellant in the bathroom burping the bottle.

{¶37} Next, appellant argues trial counsel was ineffective in not objecting to the following testimony of Detective Bauer, which appellant characterizes as speculative:

{¶38} Q. Did you observe the one pot [i.e., the cooking pop bottle]?

{¶39} A. Yes, I did.

{¶40} Q. Could you tell us about that please?

{¶41} A. That was when for the quick second when I was able to walk across the kitchen area behind the informant talking to Laurie Claeys, Josh Tipton was inside the bathroom with his - - like bending over the one pot, the actual soda bottle.

{¶42} Q. What was he doing with it?

{¶43} A. *He was bending over it. He was - - I mean he had his hand on it. I can say that he was probably burping it, but I didn't see the whole process.* (Emphasis added.)

{¶44} Appellant argues that Detective Bauer's comment that appellant was "probably" burping the bottle made this testimony speculative because it shows it was not based on her personal knowledge. Appellant fails to reference any pertinent

10

authority in support of this proposition. Appellant's reliance on *State v. McCaleb*, 11th Dist. No. 2002-L-157, 2004-Ohio-5940 is misplaced. In *McCaleb*, this court held that where the witness' testimony that the victim was afraid of the defendant was based on her observation of the victim's appearance and emotional state, the testimony was not speculative. *Id.* at ¶38-40. Further, lay opinion testimony is admissible if it is rationally based on the witness' perception. Evid.R. 701. Moreover, in *State v. Stojetz*, 84 Ohio St.3d 452 (1999), the Supreme Court of Ohio held that the witness' testimony during a prosecution for a prison murder that "I guess they stuck him * * * a couple times while inside the cell" was not improper speculation where the witness also testified that he saw blood on the victim as the victim escaped from the cell and he later saw the defendant pursue the victim and stab him. *Id.* at 462-463.

{¶45} Detective Bauer's testimony that appellant was probably burping the bottle was based on her observation of appellant alone in the bathroom bending over the bottle with his hand on it. Since the detective's testimony was based on her observation of appellant, her testimony was not improper speculation. Therefore, trial counsel was not deficient in not objecting to this testimony.

{¶46} In any event, even if trial counsel's conduct was ineffective for any of the foregoing alleged deficiencies, he failed to prove prejudice in light of the overwhelming and undisputed evidence of his guilt. Detective Bauer heard appellant tell the CI to arrive in 20 minutes because by then the meth would be done. The detective testified she saw appellant and Claeys making the meth and saw appellant in the bathroom bending over and handling the bottle in which the meth was cooking. Claeys testified that she and appellant made the meth. Claeys testified that appellant put the

11

ingredients in the pop bottle and burped it. The police found the meth was still cooking in the bottle when they arrived.

{¶47} Appellant's first assignment of error is overruled.

{¶48} For appellant's second assigned error, he alleges:

{¶49} "The trial court permitted prejudicial error when it permitted witness Laurie Claeys to testify that she received no compensation for her testimony where following her testimony she withdrew her plea to the first-degree felony and entered a plea to a second-degree felony in her companion case. This arrangement was not disclosed to the jury in the instant trial."

{¶50} Appellant argues that because Claeys was allowed to withdraw her guilty plea to a first-degree felony and then pled guilty to a second-degree felony after appellant's trial was concluded, the state must have given her a "deal" to plead to a lesser charge before she testified. Therefore, appellant argues that Claeys lied at trial when she said she had not been given any promises, and the jury should have been informed of this alleged deal. However, appellant fails to reference the trial court record for any evidence to support his argument. For this reason alone, this assignment of error lacks merit. App.R. 16(A)(7).

{¶51} Moreover, our review of the record does not support appellant's argument. Claeys testified in appellant's trial that she had pled guilty to illegal manufacture of drugs, a first-degree felony; that she was in jail awaiting sentence; and that she had not been given any promises regarding sentencing. Nothing in the trial court record shows this testimony was untrue.

12

{¶52} While this appeal was pending in this court, on November 20, 2012, appellant filed a motion to remand to supplement the record. As a basis for the remand, appellant argued a remand is necessary for the trial court "to conduct discovery and supplement the record with respect to compensation received by Laurie Claeys for her testimony in trial * * *." In this court's judgment entry, dated December 12, 2012, this court denied the motion, stating that "a remand for the purpose stated in appellant's motion does not appear reasonable or justified * * *, and appellant has not offered any authority to justify a remand for that purpose."

{¶53} Appellant attached to his motion to remand a copy of the docket and a judgment entry in Claeys' companion case, which show that five weeks after appellant's trial was completed, the trial court granted Claeys' motion to vacate her guilty plea to a first-degree felony; the state amended her indictment; and Claeys then pled guilty to illegal manufacture of drugs, a second-degree felony.

{¶54} In considering appellant's assignments of error, this court is limited to a review of the trial court's record. Pursuant to App.R. 12(A)(1)(b), an appellate court is confined to the record that was before the trial court. Because the docket and judgment entry in Claeys' case is not part of the trial court's record, we cannot consider them. However, even if we could, these documents do *not* support appellant's argument that the state and Claeys agreed *before appellant's trial* that she would be allowed to plead guilty to a lesser charge after she testified.

{¶55} Appellant's second assignment of error is overruled.

{¶56} For appellant's third assigned error, he contends:

{¶57} "The Trial Court committed prejudicial error when it permitted the hearsay testimony of Joan Bauer who testified that Laurie Claeys stated that Josh Tipton, the defendant appellant herein, was engaged in "burping;" a component stage of manufacturing methamphetamine drugs."

{¶58} Appellant argued under his first assigned error that trial counsel was ineffective in not objecting to Detective Bauer's testimony that Claeys told her that appellant was burping the bottle. Under this assignment of error, appellant argues that the trial court erred in allowing this testimony on the ground that it was hearsay. As noted above, we review a trial court's decision to admit evidence only for an abuse of discretion. *Yost, supra.*

{¶59} Evid.R. 801(C) defines hearsay as "a statement * * * offered in evidence to prove the truth of the matter asserted." The Supreme Court of Ohio has stated that the historic purpose of the hearsay rule is "to exclude statements * * * that cannot be tested by cross-examination." *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶70.

{¶60} In addition to Detective Bauer's testimony that Claeys told her appellant was burping the bottle in the bathroom, Claeys also testified at trial to this same effect. While Detective Bauer's testimony was technically hearsay, any error was harmless because Claeys also testified and was subject to cross-examination. Thus, Detective Bauer's testimony was not subject to the usual concerns raised with hearsay testimony. Further, any error was harmless in light of Detective Bauer's testimony that she saw appellant burping the bottle and the other overwhelming evidence of appellant's guilt, as outlined above. We therefore hold the trial court did not abuse its discretion in allowing Detective Bauer's testimony on this subject.

14

{¶61} Appellant's third assignment of error is overruled.

{¶62} Appellant alleges the following for his fourth and final assigned error:

{¶63} "The cumulative effect of many errors in this trial, even if singularly not sufficient to warrant reversal, together deprive defendant of a fair trial."

{¶64} In *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus, the Supreme Court of Ohio recognized the doctrine of cumulative error. Pursuant to this doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). The doctrine is not applicable unless the record reveals numerous instances of trial court error. *Id.*; *State v. Webb*, 70 Ohio St.3d 325, 335 (1994) (two harmless errors involving improper opinion testimony and improperly admitted hospital records did not constitute cumulative error); *State v. Davis*, 62 Ohio St.3d 326, 348 (1992) ("Inasmuch as the other propositions [of law] are not well taken, their cumulative effect cannot be error.")

{¶65} Appellant argues that the four alleged errors to which trial counsel did not object amounted to cumulative error under a plain error analysis. However, since appellant's other assigned errors are not well taken, their cumulative effect is not error. *Id.* Moreover, each of the alleged evidentiary errors referenced by appellant was either harmless or not error at all. Further, because appellant has failed to demonstrate numerous instances of trial court error, the cumulative error doctrine does not apply here. For these reasons, we do not discern plain error.

{¶66} Appellant's fourth assignment of error is overruled.

15

{¶67}    For the reasons stated in the opinion of this court, appellant's assignments of error are overruled.  It is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.